1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARIE WHITENDALE,  ) | 1:10-cv-01561-SKO |
| ) | |
| ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff,  ) | **SOCIAL SECURITY COMPLAINT** |
| ) | |
| v.  ) | (Doc. 1) |
| ) | |
| MICHAEL J. ASTRUE,  ) | |
| Commissioner of Social Security,  ) | |
| ) | |
| Defendant.  ) | |
| ) | |
| _____ ) | |

## **BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Title II and Title XVI of the Social Security Act (the "Act"), respectively.  42 U.S.C. §§ 405(g); 1383(c).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 6, 7.)

## FACTUAL BACKGROUND

Plaintiff was born in 1958, has a high-school education, completed two years of junior college, and previously worked as a bank teller, an in-home care giver, and owned an equestrian center. (Administrative Record ("AR") 25,115, 552.) On September 30, 2004, Plaintiff filed an application for DIB and SSI, alleging disability beginning March 27, 2004, due to lupus, painful and swollen joints, depression, and extreme fatigue. (AR , 114.)[2]

### A.   Relevant Medical Evidence

On September 28, 2004, Jim C. Kim, M.D., reported the results of a rheumatology evaluation he performed on Plaintiff. (AR 465-66.) He reported that, for at least two years, Plaintiff had been suffering from polyarthralgia[3] and myalgia,[4] she experiences joint pain that is constant throughout the day. (AR 465.) Joint examination revealed no active synovitis,[5] and Plaintiff had a full range of motion involving the hands, wrists, elbows, shoulders, hips, knees, ankles, and feet. (AR 466.) Dr. Kim reported a positive Antinuclear Antibody Test ("ANA") test[2] and noted it was possible that Plaintiff suffered from chronic pain syndrome or fibromyalgia. (AR 466.) He also noted it was necessary to rule out rheumatologic or a lupus-type condition. (AR 466.) He prescribed Mobic to address her complaints of polyarthralgia and myalgia, and noted that in the future it might be appropriate to prescribe medication as treatment for mild lupus. (AR 466.)

On November 5, 2004, Plaintiff was again examined by Dr. Kim. (AR 480.) He noted that he was "concerned about a possible rheumatologic condition" and that he could not "rule out

---

[2] Plaintiff has also been diagnosed with thyroid cancer, and underwent a total thyroidectomy. (*See, e.g.,* AR 417.) Medical records related to the treatment of Plaintiff's thyroid cancer are only discussed to the extent they are relevant to the issues on appeal.

[3] Arthralgia is defined as pain in a joint. *Dorland's Illustrated Medical Dictionary* 152 (3d ed. 2007).

[4] Myalgia is defined as pain in a muscle. *Dorland's Illustrated Medical Dictionary* 1233 (3d ed. 2007).

[5] Synovitis is defined generally as painful inflammation. *Dorland's Illustrated Medical Dictionary* 1879 (3d ed. 2007).

[2] An ANA test is generally ordered to assist in screening for autoimmune disorders. *See generally* http://www.nlm.nih.gov/medlineplus/ency/article/003535.htm.

fibromyalgia." (AR 480.) On February 18, 2005, Dr. Kim again stated that he could not rule out fibromyalgia and noted that Plaintiff "feels she is not able to be a caregiver" and that she was "looking into job retraining which is fine." (AR 479.)

On examination on April 7, 2005, Dr. Kim reported that he believed Plaintiff had an underlying autoimmune disease, but it was not aggressive enough to require aggressive treatment. (AR 478.) Dr. Kim also reported the following:

> Unfortunately, she is in job retraining and feels she is unable to continue to work. She has moderate pain in multiple locations which is worse with weather changes. She has no associated signs or symptoms. Vital signs are stable. We reviewed old laboratory work. Review of systems is unremarkable today except for fatigue. I filled out her disability paperwork. I am more interested in her getting job retraining rather than getting permanent disability. Disability functional evaluation by the physical therapist is recommended. I do not have the time to do a complete disability assessment on this patient. I will report subjectively.

(AR 478.)

On October 11, 2005, Dr. Kim reported that Plaintiff had fibromyalgia and osteoarthritis. (AR 476.) Dr. Kim noted that Plaintiff had applied for permanent disability and that he had filled out some additional disability forms. (AR 476.) He noted that Plaintiff felt she was unable to continue working. (AR 476.) Dr. Kim again indicated his belief that Plaintiff suffered from some underlying autoimmune disease, such as a mild form of lupus. (AR 476.) Dr. Kim concluded his treatment note indicating the he has been treating her "more symptomatically" and "mainly filled out paperwork today." (AR 476.)

On October 18, 2005, Dr. Kim indicated that Plaintiff requested prescriptions for Prozac and Xanax. (AR 475.) Dr. Kim reported that Plaintiff had "no problems with this" and indicated that he understood she was applying for permanent disability. (AR 475.) He again noted that Plaintiff described "her overall pain level as severe without modifying factors or associated signs or symptoms." (AR 475.)

On November 17, 2005, Dr. Kim again examined Plaintiff and noted that she would "follow with Shirley, [Dr. Kim's] women's health specialist to deal with fibromyalgia and osteoarthritis type symptoms." (AR 474.) On March 22, 2006, Dr. Kim noted that Plaintiff "brought in extensive paperwork to fill out which was done." (AR 473.)

On July 20, 2006, Dr. Kim reported that on examination Plaintiff described her pain as moderate, but Dr. Kim noted again that there were no associated signs or symptoms.  She reported nausea and vomiting, and Dr. Kim stated that he would refer Plaintiff to a gastrointestinal specialist if necessary.  (AR 472.)

On September 25, 2006, Plaintiff presented to Dr. Kim "with an immobilizing device on the thumb."  He indicated that Plaintiff "may have a trigger finger."  (AR 471.)  He injected Plaintiff's right thumb with ethyl chloride and Kenalog.  (AR 471.)  Dr. Kim also completed a "Lupus (Systemic Lupus Erythematosus) Impairment Questionnaire."  (AR 260.)  He noted she had arthritis that affected her fingers, although Dr. Kim did not indicate *how* it affected her fingers.  (AR 260.)  He noted a positive ANA test and that Plaintiff suffered from fatigue and depression.  (AR 261-63.)  In responding to the questionnaire, Dr. Kim was asked to "estimate your patient's residual functional capacity if your patient were placed in a normal competitive five day a week work environment on a sustained basis."  (AR 263.)  Below the question prompt, Dr. Kim place an asterisk and wrote "Subjective report."  (AR 263.)  He proceeded to answer the question prompts indicating that Plaintiff could sit for less than an hour in an eight-hour day, could stand and walk less than an hour per day, could never lift or carry more than five pounds, and could only occasionally lift or carry less than five pounds.  (AR 264.)  Notably, Dr. Kim also recommended that Plaintiff obtain a disability evaluation by a physical therapist.  (AR 265.)

On February 9, 2007, Dr. Kim dictated a letter to Plaintiff's disability claim representative stating that, due to Plaintiff's problems with fibromyalgia and osteoarthritis, she "is having severe limitation in terms of her activities of daily living or any activity required in terms of vocational activities."  (AR 467.)  Dr Kim indicated his belief that "it is unlikely that she will be able to do any meaningful employment."  (AR 467.)

On August 30, 2007, Plaintiff was again examined by Dr. Kim.  (AR 494.)  He indicated that Plaintiff  had a mild form of lupus, and a recent thyroid biopsy indicated thyroid cancer for which she required surgery.  (AR 494.)  He also noted that she suffered from ongoing gastrointestinal bleeding.  (AR 494.)

On October 30, 2007, Plaintiff was examined by Dr. Kim and reported trouble with her left knee. (AR 495.) Dr. Kim indicated that he would like to obtain an x-ray of the knee, but stated that it would depend upon whether she was going to start radiation and chemotherapy. (AR 495.) On November 5, 2007, x-rays were taken of Plaintiff's right and left knees. On the right knee, the radiologist found "[m]edial compartment narrowing and slight hypertrophic change medially compatible with osteoarthritis similar to that seen on the left side. No significant effusion or synovitis demonstrated." (AR 416.) On the left, the radiologist found "[m]edial compartment narrowing and slight boy hypertrophic change compatible with mild osteoarthritis. No effusion or synovitis demonstrated." (AR 416.)

On November 10, 2007, Plaintiff was examined by James Nowlan, M.D., an internist. (AR 379-383.) Dr. Nowlan reviewed Plaintiff's medical records and noted that there was no documentation "why she might have fibromyalgia other than she has pains." (AR 379.) He also noted she was diagnosed with thyroid cancer and had undergone a thyroidectomy and radiation therapy. (AR 379.) Dr. Nowlan indicated that Plaintiff had arthritis in her knee, which was diagnosed in 2004. Plaintiff reported that she experienced constant pain in both knees that worsened when she walked. (AR 380.) Plaintiff reported that she suffered from a bleeding ulcer in 2007, and she had pain in her jaw. She also stated that she had experienced pain in the palms of her hands since 2004 that involved the swelling of her fingers; however, warmth and exercise tended to alleviate the pain. (AR 380.)

Objectively, Dr. Nowlan noted that Plaintiff's height was 5'3, and she weighed 240 pounds. (AR 380.) Plaintiff's coordination and gait were noted to be "okay," and the heel-and-toe walking test results were normal. (AR 381.) Plaintiff complained of knee pain but on testing of flexion and extension of the knee joints, Dr. Nowlan noted that she made "no effort to resist the movement or [withdraw]." (AR 381.) Plaintiff's motor strength was noted to be 5/5, sensory examination was normal, and Plaintiff's reflexes were noted to be normal. (AR 382.)

Dr. Nowlan provided a functional assessment indicating that he "doubt[ed] very much" that Plaintiff had lupus. (AR 382.) He noted that the pain in her knees "seems minimal and would require x-rays to establish whether or not there was any significant arthritis in her knees." (AR 382.)

5

He determined that Plaintiff could stand and walk for four hours in an eight-hour day, she could sit for an unlimited amount of time, she would be able to lift 20 pounds frequently and 40 pounds occasionally, and Plaintiff had no postural or manipulative limitations. (AR 382.)

On November 24, 2007, Plaintiff was evaluated by Robert A. Izzi, Ph.D. (Doc. 375-78.) Plaintiff's chief complaints related to lupus, arthritis, her joints, and depression. (Doc. 375.) He reported that she has had depression since 2002, and that she had been diagnosed in the past with a depressive disorder and a panic disorder. (Doc. 376.) Plaintiff scored a 24/30 on a Folstein Mini Mental State Examination, which suggested mild cognitive impairment. (Doc. 377.) Plaintiff's particular area of difficulty related to attention and short-term memory. (Doc. 377.) Dr. Izzi diagnosed Plaintiff with a depressive disorder, but indicated that she "does appear capable of performing a simple and repetitive type task on a consistent basis over and eight-hour period." (Doc. 378.) Dr. Izzi opined that Plaintiff may experience difficulty performing a complex task on a consistent basis, but on a purely psychological basis, she appeared capable of responding to usual work situations regarding attendance, safety issues, and responding to changes in a routine work setting. (AR 378.)

On February 8, 2008, Physician Assistant Sheila Scheinesson ("PA Scheinesson") provided a statement regarding a renal colic problem Plaintiff was currently suffering. (AR 464.) PA Scheinesson stated that the problem constituted an acute condition, but Plaintiff had been experiencing nausea, vomiting, and moderate pain in connection with the renal colic issue. (AR 464.) She was receiving medication for the symptoms which PA Scheinesson noted would have the potential to sedate Plaintiff and she should not drive or operate heavy machinery. (AR 464.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 54-68, 71-76.) On October 4, 2006, ALJ Stephen Webster held a hearing where Plaintiff testified and was represented by counsel. (AR 37.)

On November 17, 2006, the ALJ issued a decision finding that Plaintiff (1) had severe conditions of systemic lupus eryethematosus, fibromyalgia, and thyroid disease; (2) did not have an

impairment or combination of impairments that meets or medically equals one of the listed impairments; (3) had the residual functional capacity to lift/carry 10 pounds and occasionally 20 pounds, stand and walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday, and (4) Plaintiff was only capable of occasionally climbing, balancing, crouching, crawling or kneeling; and that Plaintiff was capable of performing her past relevant work as a bank teller. Based on these findings, the ALJ concluded that Plaintiff was not disabled.

On July 19, 2007, the Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded the matter to the ALJ for reconsideration. (AR 64-68.)   The Appeals Council ordered that the ALJ obtain additional evidence concerning the claimant's impairments, further evaluate Plaintiff's mental impairment, give further consideration to Plaintiff's maximum residual functional capacity during the entire period at issue and explain the weight given to any medical opinion evidence, and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base.

On remand, another hearing was held on February 22, 2008. (AR 548-72.) Plaintiff testified that she was unable to perform any of her past work due to the fact that she had cancer and was taking medication that made her dizzy. (AR 553.) Additionally, she experienced complications with kidney stones, fibromyalgia, and rheumatoid arthritis. She had "trigger finger" that caused problems with her left thumb.  (AR 553.)  She experienced pain in her knees, the back of her neck, her shoulders, and in her hands. (AR 554-55.)  While medication alleviated some of her pain, it caused frequent dizziness. (AR 555.)  As a result, Plaintiff was forced to lie down for approximately six hours during the day. (AR 555-56.)  Her kidney stones caused her to experience constant pain that she treated with medication; however, the medication caused her to experience nausea. (AR 556-57.) Plaintiff lived with her daughter, who was 17 and helped Plaintiff with cooking, cleaning, and shopping. (AR 557-58.)  Plaintiff had cancer that she believed caused her constant fatigue. (AR 558-59.)  She could sit for only 15 minutes at one time (AR 560), and being on her feet for long periods of time caused her pain in her knees; she testified that she could stand for approximately 15 minutes. (AR 561.)  She also experienced headaches every day, as well as confusion. (AR 562.)

1    Finally, she indicated that she struggled to pick up small objects with her fingers because the "tips

2    are numb." (AR 566.)

3        A vocational expert ("VE") testified that a person of Plaintiff's age and with her education,

4    work experience, and residual functional capacity would be able to perform unskilled, light work in

5    jobs such as bagger (DOT 920.687-018), garment sorter (DOT 222.687-014), and grader (DOT

6    529.665-010). The VE testified that a person of Plaintiff's age and with her education, work

7    experience, and residual functional capacity who was limited to simple, routine, repetitive work

8    could perform all the jobs previously noted. (AR 570.) The VE also testified that the same

9    hypothetical person, who could also perform frequent fine manipulation bilaterally, would be able

10    to perform all of the jobs previously identified. Finally, the VE testified that a hypothetical person

11    with all of the skills and limitations identified who could not work eight hours a day, 40 hours a

12    week could not perform any jobs. (AR 571.)

13        On March 6, 2008, the ALJ issued a new decision, finding Plaintiff not disabled. (AR 19-

14    26.) The ALJ determined that Plaintiff had the following severe conditions: mild lupus,

15    fibromyalgia, obesity, thyroid cancer with total thyroidectomy, "trigger thumb" of the left hand, and

16    mild osteoarthritis of both knees. (AR 21.) Despite these severe impairments, the ALJ determined

17    that none individually or in combination meets one of the listed impairments in 20 C.F.R. Part 404,

18    Subpart P, Appendix 1. (AR 23.) The ALJ found that Plaintiff retained the RFC to perform light

19    work, but that she is limited to only occasionally climbing, balancing, crouching, crawling, or

20    kneeling (AR 23); she is unable to perform any past relevant work; and there are jobs that exist in

21    significant numbers in the national economy that she can perform. (AR 25.)

22        Plaintiff sought review of this decision before the Appeals Council. On July 1, 2010, the

23    Appeals Council denied review. (AR 5-12.) Therefore, the ALJ's decision became the final decision

24    of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481

25 **C.**    **Plaintiff's Contentions on Appeal**

26        On August 30, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's

27    decision. Plaintiff argues that the ALJ improperly weighed the medical evidence and failed to

28    provide legally sufficient reasons in determining Plaintiff was not entirely credible.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

**APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**A.    The ALJ Properly Weighed the Opinion of Dr. Kim**

In September 2006, Dr. Kim completed a check-box type form that indicated that Plaintiff's ability to sit, stand, or walk was limited to less than an hour in an eight-hour workday.  (AR 263.) In February 2007, Dr. Kim also opined that Plaintiff was "having severe limitation in terms of her activities of daily living or any activity required in terms of vocational activities" and further stated that "it is unlikely that she will be able to do any meaningful employment." (AR 24; 467.)  The ALJ rejected Dr. Kim's opinions because Dr. Kim acknowledged that the limitations he imposed in the September 2006 opinion were based on a "subjective report" from Plaintiff and Dr. Kim further recommended a disability evaluation be performed by physical therapy – essentially indicating Dr. Kim did not intend for his opinion to constitute a disability evaluation.  (AR 24; 260-65.) Moreover, the ALJ noted that Dr. Kim's treatment records did not provide any objective basis for such severe limitations and failed to provide objective clinical findings to support the stated

10

1   limitations.  (AR 24.)  With regard to Dr. Kim's opinion that Plaintiff was unlikely to be able to

2   perform meaningful employment, the ALJ determined that there was no objective basis for this

3   opinion, and it was essentially unsupported by any clinical findings.  (AR 24.)

4          Plaintiff asserts that the ALJ failed to state specific and legitimate reasons for discounting

5   the opinion of Dr. Kim.  Specifically, Plaintiff argues that the ALJ's rejection of Dr. Kim's opinions

6   as not citing any objective basis for the severe limitations opined is non-specific and inaccurate.

7   (Doc. 14, 14:8-11.)  Plaintiff contends that Dr. Kim treats Plaintiff for her fibromyalgia which is

8   diagnosed entirely on the basis of a patient's reports of pain and other symptoms.  According to

9   Plaintiff, the absence of objective medical evidence  is not a legitimate reason to discount an opinion

10  regarding fibromyalgia when there are no objective medical tests to confirm the existence of

11  fibromyalgia – it is diagnosed and treated based only on the patient's subjective reports and ruling

12  out other conditions.  (Doc. 14, 14:5-15:28.)

13         Although fibromyalgia may be diagnosed and assessed on the basis of subjectively reported

14  complaints, Dr. Kim's opinion regarding Plaintiff's limitations did not constitute a discussion of his

15  professional assessment of Plaintiff's subjectively reported symptoms, nor did it provide any

16  discussion of the clinical findings he made in an effort to rule out fibromyalgia and lupus.

17         First, by expressly indicating that the September 2006 limitation as to Plaintiff's ability to sit,

18  stand, and walk were predicated on Plaintiff's subjectively reported symptoms, Dr. Kim indicated

19  that the limitations did not constitute his observations or clinical judgments.  Plaintiff argues that Dr.

20  Kim's notation that the limitations recorded were "subjective reports" did not mean his opinion was

21  merely a recitation of Plaintiff's complaints instead of Dr. Kim's professional medical judgment.

22  (Doc. 18, 2:15-17 ("[The subjective-report notation], however, does not imply that the doctor was

23  acting merely as a secretary in recording Ms. Whitendale's self-assessments.").)  However, in a

24  section for "notes" at the end of the form, Dr. Kim recommended that "physical therapy" provide an

25  opinion as to Plaintiff's physical abilities.  (AR 265.)  This notation provided a reasonable foundation

26  for the ALJ to infer that Dr. Kim was not offering his subjective, professional opinion about

27  Plaintiff's abilities, he was merely reciting what Plaintiff told him.  *Batson v. Comm'r of Soc. Sec.*

28  *Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (If evidence exists to support more than one rational

1    interpretation, court must defer to the Commissioner's decision).  Further, the record reflects that,

2    in April 2005, Dr. Kim indicated in a treatment note that a complete disability assessment by

3    physical therapist was recommended as he did not "have to time to do a complete disability

4    assessment on the patient." (AR 478.)  That Dr. Kim again recommended a disability evaluation by

5    a physical therapist in his September 2006 report which was an indication that the disability

6    assessment recommended in April 2005 had never been completed, and the September 2006 report

7    was more a statement of Plaintiff's assessment of her limitations than his professional medical

8    assessment regarding the extent of her limitations.  This was a legitimate and specific reason to give

9    less weight to Dr. Kim's September 2006 report.

10          Second, the September 2006 report provided only conclusions presented by check-off boxes,

11   and did not provide any substantive reasoning or findings to support the conclusory limitations

12   noted.  Even to the extent that the limitations in the September 2006 report represented Dr. Kim's

13   expert judgment as to the extent of Plaintiff's limitations, the recorded limitations are entirely

14   unsupported by any findings.  Moreover, Dr. Kim's treating notes do not provide sufficient findings

15   or discuss the basis of these limitations.  The ALJ's rejection of Dr. Kim's September 2006 report

16   as unsupported by adequate findings is both sufficiently specific and legitimate.  *See Batson*,

17   359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are conclusory, brief, and

18   unsupported by the record as a whole or by objective medical findings); *Connett v. Barnhart*,

19   340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion is properly rejected where the treating

20   physician's treatment notes "provide no basis for the functional restrictions he opined should be

21   imposed [on the claimant]").

22          Dr. Kim's February 2007 opinions that Plaintiff was having "severe limitation in terms of her

23   activities of daily living or any activity required in terms of vocational activities" and that it was

24   unlikely Plaintiff would be able to perform any meaningful employment were likewise rejected by

25   the ALJ.  (AR 24; 467.)  The ALJ stated that the opinions were not supported by an objective basis

26   other than a positive ANA test, and noted that Dr. Kim's initial September 2004 report regarding

27   fibromyalgia and lupus contained an absence of clinical findings.

28

1      Although Plaintiff argues that fibromyalgia is not diagnosed with objective medical tests,

2   there are still clinical findings that can be made to establish a diagnosis, such as tender or trigger

3   points; and there are also objective tests and findings that can be made to rule out other conditions.

4   *See Melendez v. Astrue*, 2011 WL 6402287, at * 9 (C.D. Cal. Dec. 20, 2011) ("Objective tests cannot

5   establish the presence or absence of fibromyalgia but myelograms and other tests are administered

6   to rule out other diseases and alternative explanations for the pain." (citing *Jordan v. Northrop*

7   *Grumman Corp.*, 370 F.3d 869, 873 (9th Cir. 2003))).   Here, the ALJ noted that Dr. Kim did not

8   indicate the presence of any tender points.  (AR 21.)   While there may be no objective test to

9   diagnose fibromyalgia, there are certainly findings that can be discussed and evaluated in reaching

10   the diagnosis or used to rule out other conditions.  Dr. Kim's treatment notes provide no such detail.

11   With regard to Plaintiff's lupus, the ALJ likewise noted that there were insufficient signs or

12   symptoms documented to satisfy the diagnostic criteria for lupus erythematosus.  Essentially, the

13   ALJ rejected Dr. Kim's opinions because they were conclusory and unsubstantiated with any

14   assessment of Plaintiff's symptoms and signs.  The lack of adequately stated clinical findings  –

15   whether those are comprised of objective test results ruling out other conditions or Dr. Kim's

16   assessment of Plaintiff's subjective reports that supported a diagnosis for fibromyalgia and/or lupus

17   – and inadequately supported conclusions constituted legitimate and specific bases to reject Dr.

18   Kim's opinions. *See Batson*, 359 F.3d at 1195 n. 3 (9th Cir. 2004).

19   **B.      The ALJ's Consideration of Dr. Nowlan's Opinion**

20      Plaintiff also challenges the ALJ's assessment of Dr. Nowlan's opinion.  Dr. Nowlan

21   determined that Plaintiff was limited to standing and walking no more than four hours in an eight-

22   hour day. (AR 382.)  While the ALJ acknowledged that Plaintiff was limited in her ability to stand

23   and walk, he rejected Dr. Nowlan's opinion as to the degree to which Plaintiff was limited.  Instead,

24   based on an x-ray report that Dr. Nowlan did not review and because Dr. Nowlan reported minimal

25   findings to support the degree of Plaintiff's standing and walking limitation, the ALJ concluded that

26   Plaintiff could reasonably stand and walk for six hours.  (AR 24.)

27      Plaintiff asserts that there was no medical evidence as to the *degree* Plaintiff was precluded

28   from standing and walking that supported the ALJ's rejection of Dr. Nowlan's opinion in this regard.

Plaintiff contends that the ALJ's RFC that Plaintiff could stand and walk for six hours was predicated only on the ALJ's impermissible interpretation of the x-ray report and constituted an attempt to substitute his judgment for that of Dr. Nowlan – especially because no doctor of record opined that Plaintiff was able to stand and walk more than four hours. (Doc. 14, 17:22-18:19.) The Commissioner asserts that the ALJ's RFC is not a medical determination, and the ALJ is not required to "exactly match the findings of any particular medical source." (Doc. 17, 11:13-14.) The Commissioner contends that the finding as to Plaintiff's ability to stand and walk for six hours is supported by the evidence as a whole. (Doc. 17, 11:14-16.) Further, the Commissioner argues that it is the province of the ALJ to assess Plaintiff's RFC and doing so was not an impermissible use of medical judgment. (Doc. 17, 11:27-12:5.)

Here, the ALJ rejected Dr. Nowlan's opinion that Plaintiff was limited to four hours of standing and walking in an eight-hour day.[3] (AR 24.) Dr. Nowlan's opinion as to Plaintiff's limitation for standing and walking was uncontroverted, i.e., no other doctor opined that Plaintiff was able to stand and walk *more* than 4 hours in an eight-hour day. Moreover, to the extent Dr. Kim's opinion was contradictory in that it imposed a *greater* limitation on Plaintiff's ability to walk and stand, it was rejected by the ALJ. As an examining physician, Dr. Nowlan's opinion in this regard was entitled to deference unless the ALJ provided clear and convincing reasons to reject it. *Lester*, 81 F.3d at 830.

Dr. Nowlan stated that the pain in Plaintiff's knees appeared minimal, but he noted the need to obtain x-rays regarding the extent of any arthritis. (AR 382.) On examination of Plaintiff's knees, she was found to have zero degrees of extension. Dr. Nowlan noted that she complained of pain, but he also reported that Plaintiff made "no effort to resist the movement or [withdraw]." (AR 381.) Dr. Nowlan concluded that Plaintiff could stand and walk no more than four hours in an eight-hour day. The ALJ reasoned that the mild findings on examination do not support the degree of restrictive limitations on Plaintiff's ability to stand and walk to which Dr. Nowlan opined. Further, x-rays

---

[3] "While the ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions, the ALJ must still set forth legally sufficient reasons to support whatever portion was rejected. *Magallanes v. Bowen*, 881 F.2d 747, 753-54 (9th Cir. 1989).

obtained just prior to Dr. Nowlan's examination that Dr. Nowlan was unable to review, showed only mild osteoarthritis in the knees. (AR 416.) The ALJ reasoned that, in view of the minimal findings in Dr. Nowlan's report and the x-ray results, the four-hour limitation on Plaintiff's ability to stand and walk should be supplanted with a six-hour limitation on Plaintiff's ability to stand and walk. (AR 24.)

The ALJ's interpretation of the x-ray results constitutes neither substantial evidence sufficient to reject the opinion of Dr. Nowlan nor substantial evidence to the support six-hour limitation the ALJ assessed in the RFC. *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001) ("[T]he absence of an opinion does not constitute substantial evidence supporting the ALJ's findings."). In other words, the x-ray results do not speak for themselves as to the hours Plaintiff can stand and walk – i.e., they do not necessarily contradict Dr. Nowlan's stated limitation. Moreover, Dr. Nowlan observed that Plaintiff's pain appeared to be minimal (AR 382), and that she did not make an effort to resist the movement or withdraw when her knee joints were tested (AR 381). Nevertheless, Dr. Nowlan *still* concluded that Plaintiff was limited to four hours of walking or standing in an eight-hour day. Thus, the mild x-ray results actually appear to be consistent with Dr. Nowlan's minimal findings. The actual issue presented by Dr. Nowlan's report is why the imposed limitation was so great in light of the fact that Dr. Nowlan did not find Plaintiff's knee condition to be particularly severe or painful.

Unlike situations where a physician's findings provide *no* basis to support the limitation imposed, *see Connett*, 340 F.3d at 875 (treating physician's opinion is properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed [on the claimant]"), here Dr. Nowlan found that Plaintiff is obese. (AR 380 (finding Plaintiff obese and indicating she is 5'3, 240 pounds).) In fact, the ALJ found Plaintiff's obesity to be a severe impairment. (AR 21.) The obesity finding made by Dr. Nowlan *could* support the limitations to walking and standing he imposed, particularly in light of the arthritis in Plaintiff's knees as confirmed by the x-rays. Thus, Dr. Nowlan's opinion was not necessarily unsupported by adequate findings; rather, it was ambiguous. Because Plaintiff's ability to walk and stand is dispositive of the issue of disability, it was a material issue that the ALJ was required to resolve. The x-ray results did not by themselves provide evidence that would assist the ALJ in resolving the

1  ambiguity,[4] nor was there any other medical opinion of record that indicated Plaintiff could walk or

2  stand more than four hours in an eight-hour day on which the ALJ could rely to resolve the

3  ambiguity.

4  Where the record is ambiguous, the ALJ's duty to supplement the record is triggered. *Webb*

5  *v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The ALJ must take reasonable steps to ensure that

6  the issues and questions raised by the medical evidence is addressed so that the disability

7  determination may be fairly made on a sufficient evidentiary record, whether favorable or

8  unfavorable to the claimant. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999); *see also*

9  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). When it is necessary to enable the ALJ to resolve a

10  disability issue, the duty to develop the record may require consulting a medical expert or ordering

11  a consultative examination. *See* 20 C.F.R. §§ 404.1519a, 416.919a.

12  As there are findings in Dr. Nowlan's opinion that could adequately support the limitation

13  imposed, the ALJ's rejection of that portion of the opinion as unsupported by the findings noted is

14  not legally sufficient. Additionally, because the x-ray results could not assist the ALJ in determining

15  to what degree Plaintiff's obesity affected her ability to walk and stand. As there was no other

16  credible medical opinion in the record regarding Plaintiff's ability to walk and stand, the ALJ had

17  a duty to develop the record to resolve the issue. Finally, because of the lack of medical evidence

18  on this issue, the ALJ's RFC assessment as to Plaintiff's ability to walk and stand was not supported

19  by substantial evidence.

20  **C.    Remand Is Required**

21  The ALJ did not provide sufficient reasons based on substantial evidence in the record to

22  discount the opinion of Dr. Nowlan with regard to Plaintiff's ability to stand and walk. Generally,

23  "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating

24  or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at

---

[4] Not only does the x-ray fail to provide evidence of how obesity may impact Plaintiff's ability to stand and walk, the radiologist's finding of mild osteoarthritis is not necessarily indicative of a six-hour limitation on standing and walking as oppose to four-hour limitation – that assessment was provided by the ALJ's interpretation of the results. *See Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d 1985) (ALJ's independent review and interpretation of laboratory results was an impermissible substitution of the ALJ's own judgment for that of a physician).

1   830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's

2   condition met a listing (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989))).  Crediting

3   an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports

4   a finding of disability.  *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

5          Courts retain flexibility, however, in applying this crediting-as-true theory.  *Connett*,

6   340 F.3d at 876 (remanding for further determinations where there were insufficient findings as to

7   whether plaintiff's testimony should be credited as true).  "In some cases, automatic reversal would

8   bestow a benefits windfall upon an undeserving, able claimant."  *Barbato v. Comm'r of Soc. Sec.*

9   *Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the

10  ALJ made a good-faith error in that some of his stated reasons for rejecting a physician's opinion

11  were legally insufficient).

12         Here, the ALJ erred because the stated reasons for rejecting a portion of Dr. Nowlan's opinion

13  are not legally insufficient.  "Such good faith errors inevitably will occur.  Reasonable judicial minds

14  sometimes will disagree regarding proper application of the rather imprecise standard of 'specific,

15  legitimate' reasons."  *Barbato*, 923 F. Supp. at 1278.  "[U]nder the rule in *Lester*, the [medical]

16  opinion will trigger benefits whenever the ALJ's previously stated reasons for rejecting the opinion

17  fall short of the ill-defined 'specific, legitimate' standard."  *Id.* (footnote omitted).  "A reviewing

18  court should have discretion to avoid this inequitable result by remanding the case for further

19  administrative proceedings.  Remand necessitates delay, but the cost of this delay should be balanced

20  against the risk of an erroneous determination."  *Id.*; *see also McAllister v. Sullivan*, 888 F.2d 599,

21  603 (9th Cir. 1989) (remanding for further proceedings because Secretary of Health and Human

22  Services was in better position than court to point to evidence in record to provide specific,

23  legitimate reasons to disregard treating physician's opinion).  Accordingly, the Court exercises its

24  discretion to remand this case to the Commissioner for further proceedings.  *See McAllister*,

25  888 F.2d at 603 (holding that court may remand to allow ALJ to provide the requisite specific and

26  legitimate reasons for disregarding medical opinions).

27         Because the Court remands this case for renewed consideration of the medical evidence, the

28  Court dispenses with an exhaustive analysis of the ALJ's credibility determination.  In light of the

Court's finding that the ALJ failed to properly evaluate the opinion of Dr. Nowlan and develop the record, and because credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded.   The Court need not consider Plaintiff's argument regarding credibility in light of the need for reversal on other grounds. *See Marcia v. Sullivan*, 900 F.2d 172,177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Rosemarie Whitendale and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   February 28, 2012**              _____/s/ Sheila K. Oberto_____
                                          UNITED STATES MAGISTRATE JUDGE